**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN OVERSIGHT,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. GENERAL SERVICES ADMINISTRATION, *et al.*,<br><br>*Defendants*. | Case No. 18-2419-CKK |

**DECLARATION OF HART WOOD IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, HART WOOD, hereby declare as follows:

1. I am an attorney at American Oversight, the plaintiff in the above-captioned litigation. I submit this Declaration in support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment. The facts set forth in this Declaration are true and of my own personal knowledge.

2. On August 30, 2018, American Oversight submitted three requests pursuant to the Freedom of Information Act (FOIA) to the U.S. General Services Administration (GSA). Two of those FOIA requests are attached to the Declaration of Travis Lewis (ECF No. 22-2) as Exhibits 1 and 2. Attached hereto as Exhibit A is the third FOIA request at issue that American Oversight submitted to GSA.

3. The Federal Bureau of Investigation released 17 pages of records to American Oversight on May 31, 2019. Attached hereto as Exhibit B are excerpts from that production of records.

4. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 4, 2019

Hart W. Wood

# Index of Exhibits

| **Exhibit** | **Description** |
|---|---|
| A | GSA December 2017 Meeting Request |
| B | FBI Production Excerpts |

# EXHIBIT A

AMERICAN OVERSIGHT

August 30, 2018

**VIA ONLINE PORTAL**

U.S. General Services Administration
FOIA Requester Service Center (H1F)
1800 F Street NW, Room 7308
Washington, DC 20405-0001
Via FOIAOnline

**Re: Freedom of Information Act Request**

Dear Freedom of Information Officer:

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the implementing regulations of the General Services Administration (GSA), 41 C.F.R. Part 105-60, American Oversight makes the following request for records.

On August 27, 2018, the GSA Office of the Inspector General (OIG) published a report, "Review of GSA's Revised Plan for the Federal Bureau of Investigation Headquarters Consolidation Project."[1] The report alleges that GSA Administrator Emily Murphy may have misled Congress about the White House's involvement in the FBI Headquarters Consolidation project. Notably, it highlights that the White House invoked *executive* privilege to prevent the OIG—a component of GSA, an *executive* branch agency—from learning statements made by the President in meetings regarding the FBI Headquarters project. In addition, recent press reporting alleges that high-level Trump administration officials played roles in scuttling plans for relocating FBI Headquarters—instead prioritizing the costlier option of building a new headquarters downtown.[2]

Given President Trump's reported interest in the future of the FBI Headquarters and its proximity to Trump International Hotel—a property in which he still maintains a financial interest—it is in the public interest to understand the extent to which Trump's personal business motivations are dictating matters of national security. American Oversight seeks records to inform whether and to what extent the president's personal financial interests influenced a multi-billion-dollar federal project with national security considerations.

---

[1] OFFICE OF INSPECTOR GEN., U.S. GEN. SERVS. ADMIN., REVIEW OF GSA'S REVISED PLAN FOR THE FEDERAL BUREAU OF INVESTIGATION HEADQUARTERS CONSOLIDATION PROJECT (Aug. 27, 2018), https://www.gsaig.gov/sites/default/files/audit-reports/Review%20of%20GSA%E2%80%99s%20Revised%20Plan%20for%20the%20FBI%20Headquarters%20Consolidation%20Project%20REDACTED%20-%20508%20compliant.pdf.

[2] Jonathan O'Connell, *Trump Intervenes in FBI Headquarters Project*, WASH. POST, July 30, 2018, https://www.washingtonpost.com/business/2018/07/30/trump-intervenes-fbi-headquarters-project/?utm_term=.f264663e29a6.

## Requested Records

American Oversight requests that the GSA produce the following within twenty business days:

> All meeting notes, agendas, informational material, readouts, and follow-up conversation notes related to the FBI Headquarters Consolidation Project from any White House meetings that may have addressed the topic and that took place on or about December 20, 2017, with GSA Administrator Emily Murphy, White House Chief of Staff John Kelly, OMB Director Mick Mulvaney, and/or GSA Public Buildings Service Commissioner Daniel Mathews in attendance.

American Oversight seeks all responsive records regardless of format, medium, or physical characteristics. In conducting your search, please understand the terms "record," "document," and "information" in their broadest sense, to include any written, typed, recorded, graphic, printed, or audio material of any kind. We seek records of any kind, including electronic records, audiotapes, videotapes, and photographs, as well as letters, emails, facsimiles, telephone messages, voice mail messages and transcripts, notes, or minutes of any meetings, telephone conversations or discussions. Our request includes any attachments to these records. **No category of material should be omitted from search, collection, and production.**

Please search all records regarding agency business. **You may not exclude searches of files or emails in the personal custody of your officials, such as personal email accounts.** Records of official business conducted using unofficial systems or stored outside of official files is subject to the Federal Records Act and FOIA.[3] **It is not adequate to rely on policies and procedures that require officials to move such information to official systems within a certain period of time; American Oversight has a right to records contained in those files even if material has not yet been moved to official systems or if officials have, through negligence or willfulness, failed to meet their obligations.**[4]

In addition, please note that in conducting a "reasonable search" as required by law, you must employ the most up-to-date technologies and tools available, in addition to searches by individual custodians likely to have responsive information. Recent technology may have rendered GSA's

---

[3] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149—50 (D.C. Cir. 2016); *cf. Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955—56 (D.C. Cir. 2016).

[4] *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, No. 14-cv-765, slip op. at 8 (D.D.C. Dec. 12, 2016) ("The Government argues that because the agency had a policy requiring [the official] to forward all of his emails from his [personal] account to his business email, the [personal] account only contains duplicate agency records at best. Therefore, the Government claims that any hypothetical deletion of the [personal account] emails would still leave a copy of those records intact in [the official's] work email. However, policies are rarely followed to perfection by anyone. At this stage of the case, the Court cannot assume that each and every work-related email in the [personal] account was duplicated in [the official's] work email account." (citations omitted)).

prior FOIA practices unreasonable. **In light of the government-wide requirements to manage information electronically by the end of 2016, it is no longer reasonable to rely exclusively on custodian-driven searches.**[5] **Furthermore, agencies that have adopted the National Archives and Records Agency (NARA) Capstone program, or similar policies, now maintain emails in a form that is reasonably likely to be more complete than individual custodians' files.** For example, a custodian may have deleted a responsive email from his or her email program, but GSA's archiving tools would capture that email under Capstone. Accordingly, American Oversight insists that GSA use the most up-to-date technologies to search for responsive information and take steps to ensure that the most complete repositories of information are searched. American Oversight is available to work with you to craft appropriate search terms. **However, custodian searches are still required; agencies may not have direct access to files stored in .PST files, outside of network drives, in paper format, or in personal email accounts.**

Under the FOIA Improvement Act of 2016, agencies must adopt a presumption of disclosure, withholding information "only if . . . disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."[6] If it is your position that any portion of the requested records is exempt from disclosure, American Oversight requests that you provide an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). As you are aware, a *Vaughn* index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA."[7] Moreover, the *Vaughn* index "must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information."[8] Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'"[9]

In the event some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document.[10] Claims of nonsegregability must be made with the same degree of detail as required

[5] Presidential Memorandum—Managing Government Records, 76 Fed. Reg. 75,423 (Nov. 28, 2011), https://obamawhitehouse.archives.gov/the-press-office/2011/11/28/presidential-memorandum-managing-government-records; Office of Mgmt. & Budget, Exec. Office of the President, Memorandum for the Heads of Executive Departments & Independent Agencies, "Managing Government Records Directive," M-12-18 (Aug. 24, 2012), https://www.archives.gov/files/records-mgmt/m-12-18.pdf.

[6] FOIA Improvement Act of 2016 § 2 (Pub. L. No. 114–185).

[7] *Founding Church of Scientology v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

[8] *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987) (emphasis in original).

[9] *Id.* at 224 (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

[10] *Mead Data Central*, 566 F.2d at 261.



GSA-18-0526

for claims of exemptions in a *Vaughn* index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**You should institute a preservation hold on information responsive to this request.** American Oversight intends to pursue all legal avenues to enforce its right of access under FOIA, including litigation if necessary. Accordingly, GSA is on notice that litigation is reasonably foreseeable.

To ensure that this request is properly construed, that searches are conducted in an adequate but efficient manner, and that extraneous costs are not incurred, American Oversight welcomes an opportunity to discuss its request with you before you undertake your search or incur search or duplication costs. By working together at the outset, American Oversight and GSA can decrease the likelihood of costly and time-consuming litigation in the future.

Where possible, please provide responsive material in electronic format by email or in PDF or TIF format on a USB drive. Please send any responsive material being sent by mail to American Oversight, 1030 15th Street, NW, Suite B255, Washington, DC 20005. If it will accelerate release of responsive records to American Oversight, please also provide responsive material on a rolling basis.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 41 C.F.R. § 105-60.305-13, American Oversight requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government procedures by the general public in a significant way.[11] Moreover, the request is primarily and fundamentally for non-commercial purposes.[12]

American Oversight requests a waiver of fees because disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding" of government activities and operations.[13] The requested records are directly related to a major government project—the relocation of FBI headquarters—and to allegations of impropriety at the highest levels of the executive branch. There is significant interest in the subject of these records.[14]

---

[11] 41 C.F.R. § 105-60.305-13(a).
[12] *Id.*
[13] 41 C.F.R. § 105-60.305-13(a)(1)–(3).
[14] *See* O'Connell, *supra* note 2; Associated Press, *Trump Involved in Decision to Keep FBI HQ in Washington, Watchdog Finds*, FOX NEWS, Aug. 28, 2018, http://www.foxnews.com/politics/2018/08/27/trump-involved-in-decision-to-keep-fbi-hq-in-washington-watchdog-finds.html; Bart Jansen, *President Donald Trump Met Twice with Officials over Replacing FBI Headquarters, Watchdog Says*, USA TODAY (Aug. 27, 2018, 8:25 PM), https://www.usatoday.com/story/news/2018/08/27/president-trump-met-twice-fbi-hq-planners-watchdog-says/1116619002/; Jeet Heer, *Trump Intervened on FBI Headquarters Move*, THE NEW REPUBLIC, Aug. 27, 2018, https://newrepublic.com/minutes/150927/trump-intervened-fbi-

The requested records will help American Oversight and the general public understand whether and to what extent the president's personal financial interests are influencing a major federal project. American Oversight is committed to transparency and makes the responses agencies provide to FOIA requests publicly available. As noted, the subject of this request is a matter of public interest, and the public's understanding of the government's activities would be enhanced through American Oversight's analysis and publication of these records.

This request is primarily and fundamentally for non-commercial purposes.[15] As a 501(c)(3) nonprofit, American Oversight does not have a commercial purpose and the release of the information requested is not in American Oversight's financial interest. American Oversight's mission is to promote transparency in government, to educate the public about government activities, and to ensure the accountability of government officials. American Oversight uses the information gathered, and its analysis of it, to educate the public through reports, press releases, or other media. American Oversight also makes materials it gathers available on its public website and promotes their availability on social media platforms, such as Facebook and Twitter.[16] American Oversight has demonstrated its commitment to the public disclosure of documents and creation of editorial content. For example, after receiving records regarding an ethics waiver received by a senior DOJ attorney,[17] American Oversight promptly posted the records to its website and published an analysis of what the records reflected about DOJ's process for ethics waivers.[18] As another example, American Oversight has a project called "Audit the Wall," where the organization is gathering and analyzing information and commenting on public releases of information related to the administration's proposed construction of a barrier along the U.S.-Mexico border.[19]

Accordingly, American Oversight qualifies for a fee waiver.

---

headquarters-move; Renae Reints, *Trump Was Involved with Planning of New FBI Headquarters, Inspector General Finds*, FORTUNE, Aug. 28, 2018, http://fortune.com/2018/08/28/trump-fbi-headquarters-inspector-general-report/.

[15] 41 C.F.R. § 105-60.305-13(a)(4).

[16] American Oversight currently has approximately 11,900 page likes on Facebook, and 45,000 followers on Twitter. American Oversight, FACEBOOK, https://www.facebook.com/weareoversight/ (last visited Aug. 30, 2018); American Oversight (@weareoversight), TWITTER, https://twitter.com/weareoversight (last visited Aug. 30, 2018).

[17] *DOJ Civil Division Response Noel Francisco Compliance,* AMERICAN OVERSIGHT, https://www.americanoversight.org/document/doj-civil-division-response-noel-francisco-compliance.

[18] *Francisco & the Travel Ban: What We Learned from the DOJ Documents*, AMERICAN OVERSIGHT, https://www.americanoversight.org/francisco-the-travel-ban-what-we-learned-from-the-doj-documents.

[19] *Audit the Wall*, AMERICAN OVERSIGHT, https://www.americanoversight.org/investigation/audit-the-wall.

## Conclusion

We share a common mission to promote transparency in government. American Oversight looks forward to working with GSA on this request. If you do not understand any part of this request, have any questions, or foresee any problems in fully releasing the requested records, please contact Cerissa Cafasso at foia@americanoversight.org or (202) 869-5244. Also, if American Oversight's request for a fee waiver is not granted in full, please contact us immediately upon making such a determination.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

# EXHIBIT B

# FBI HEADQUARTERS PORTFOLIO:
## NATIONAL CAPITAL REGION STRATEGY



# UPCOMING DECISIONS:

Align Strategy Proposed to Congress with FBI's Vision by Making the Following Key Decisions:




## RECOMMENDED COURSE OF ACTION:

- With Eight Weeks Remaining, Immediately Identify the Key FBI Decisions Makers Who Will Provide Counsel and Input on the Final Decisions
- Convene Decision Counsel for 30 Minutes Weekly between Now and 1/22/18 to Receive Regular Updates on:
  - Data to Support Major Decisions
  - Political Environment: Capitol Hill + White House
  - Partner Engagements: GSA + OMB
  - Financial Implications of Preferred Path
  - Mission Implications of Staff Relocations
  - Real Time Update on the Evolution of Preferred FBI Path Forward
- Complete FBI 'Preferred Path Forward' by [redacted] with Final Edits Leading up to Capitol Hill Deliverable on [redacted] (requested)

Looking to early January, can you please share availability for the week of January 8th, beginning with Tuesday, Jan. 9th? Appreciate your assistance and look forward to hearing from you soon.

[redacted] b6 -2

[redacted]
Office of the Democratic Whip
H-148, The Capitol
[redacted]

**From:** Andrew Blaylock - S [mailto:andrew.blaylock@gsa.gov]
**Sent:** Tuesday, December 19, 2017 11:00 AM
**To:** [redacted] b6 -1, 2
**Cc:** [redacted] Brennan Hart - A; Jamise Harper - WPTAA; [redacted]
**Subject:** Re: GSA/FBI Mtg with Mr. Hoyer Re Acquisition Strategy for a New FBI Headquarters

[redacted]

To have the most productive meeting with Mr. Hoyer about a new FBI Consolidated HQs it's necessary that both GSA and the FBI participate in the meeting. Unfortunately, GSA and the FBI are not able to meet at the proposed dates and times.

Does Mr. Hoyer have availability to meet in early January?

Please advise.

Andrew Blaylock
Office of Congressional and Intergovernmental Affairs
U.S. General Services Administration
1800 F Street, N.W.
Washington, D.C. 20405
Office: 202.969.7189
Email: Andrew.Blaylock@gsa.gov

On Mon, Dec 18, 2017 at 10:28 AM, [redacted] wrote: b6 -2

Hi Andrew,

Tomorrow at 9am will not work for Mr. Hoyer as he has a standing meeting with his caucus that cannot be adjusted. With this in mind, Mr. Hoyer has the following available.

**Tuesday, Dec. 19th**

1:15-1:45pm

5-6pm

**Wednesday, Dec. 20th**