# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,<br>    Plaintiff<br><br>    v.<br><br>U.S. GENERAL SERVICES<br>ADMINISTRATION, *et al.*,<br>    Defendants | Civil Action No. 18-2419 (CKK) |

## MEMORANDUM OPINION
(April 20, 2020)

This lawsuit arises from Freedom of Information Act ("FOIA") requests that Plaintiff American Oversight made to Defendants General Services Administration ("GSA"), Department of Justice ("DOJ"), Office of Management and Budget ("OMB"), and Federal Bureau of Investigation ("FBI"). Plaintiff requested all meeting notes, agendas, informational material, readouts, and follow-up conversation notes from White House meetings—occurring on December 20, 2017, January 24, 2018, and June 15, 2018—concerning the FBI Headquarters Consolidation Project. The parties have filed cross-motions for summary judgment on the issues of whether or not Defendants' searches, withholding of documents, and redactions violated FIOA.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as it currently stands, the Court GRANTS IN PART and DENIES WITHOUT PREJUDICE IN PART

---

[1] The Court's consideration has focused on the following documents:
- Defs.' Mot. for Summary Judgment, ECF No. [22] ("Defs.' Mot.");
- Pl.'s Cross-Mot for Summary Judgment, ECF No. [23] ("Pl.'s Mot.");
- Defs.' Mem. in Opp'n to Pl.'s Cross-Mot. for Summary Judgment, and in Reply to Pl.'s Opp'n to Defs.' Mot. for Summary Judgment, ECF No. [27] ("Defs.' Reply"); and
- Reply in Support of Pl.'s Cross-Mot. for Summary Judgment, ECF No. [29] ("Pl.'s Reply").

Plaintiff's Motion for Summary Judgment and DENIES WITHOUT PREJUDICE Defendants'

Motion for Summary Judgment.  The Court concludes that Defendants' searches conducted in

response to Plaintiff's FOIA requests were inadequate. As such, the Court GRANTS IN PART

Plaintiff's Motion. In an effort to avoid piecemeal litigation, the Court otherwise DENIES

WITHOUT PREJUDICE Plaintiff's and Defendants' motions so that Defendants can conduct

adequate searches and identify, disclose, redact, or withhold any additional records prior to the

Court's resolution of the remaining issues.

## I.      BACKGROUND

On August 30, 2018, Plaintiff submitted three FOIA requests to Defendant GSA, three

FOIA requests to Defendant OMB, two FOIA requests to Defendant DOJ, and two FOIA

requests to Defendant FBI. Pl.'s Statement of Undisputed Material Facts ("Pl.'s Statement"),

ECF No. 23-4, ¶ 1. All requests concerned materials relating to White House meetings which

were held to discuss the FBI Headquarters Consolidation Project. *Id.*

With regard to a December 20, 2017 White House meeting, Plaintiff requested from

Defendant GSA and Defendant OMB,

> All meeting notes, agendas, informational material, readouts, and follow-up conversation
> notes related to the FBI Headquarters Consolidation Project from any White House
> meetings that may have addressed the topic and that took place on or about December 20,
> 2017, with GSA Administrator Emily Murphy, White House Chief of Staff John Kelly,
> OMB Director Mick Mulvaney, and/or GSA Public Buildings Service Commissioner
> Daniel Mathews in attendance.

Compl., ECF No. 1, ¶ 14. With regard to a January 24, 2018 White House meeting, Plaintiff

requested from all four Defendants,

> All meeting notes, agendas, informational material, readouts, and follow-up conversation
> notes related to the FBI Headquarters Consolidation Project from any White House

---

In an exercise of its discretion, the Court finds that holding oral argument in this action would
not be of assistance in rendering a decision.  *See* LCvR 7(f).

> meetings—both in Chief of Staff John Kelly's office and in the Oval Office—that may have addressed the topic and that took place on or about January 24, 2018, with GSA Administrator Emily Murphy, White House Chief of Staff John Kelly, OMB Director Mick Mulvaney, Deputy Attorney General Rod Rosenstein, FBI Director Christopher Wray, and/or President Donald Trump in attendance.

*Id.* at ¶ 17. And, finally, with regard to a June 15, 2018 White House meeting, Plaintiff requested

from all four Defendants

> All meeting notes, agendas, informational material, readouts, and follow-up conversation notes related to the FBI Headquarters Consolidation Project from any White House meetings that may have addressed the topic and that took place on or about June 15, 2018, with GSA Administrator Emily Murphy, White House Chief of Staff John Kelly, Deputy Attorney General Rod Rosenstein, FBI Director Christopher Wray, OMB Deputy Director Russ Vought, White House Counsel Don McGahn, White House Director of Legislative Affairs and Assistant to the President Marc Short, and/or President Donald Trump in attendance.

*Id.* at ¶ 22.

All four Defendants acknowledged receipt of Plaintiff's requests. Pl.'s Stat., ECF No. 23-4, ¶ 2. However, as of the date this lawsuit was filed on October 23, 2018, all Defendants had failed to notify Plaintiff of any determinations regarding the FOIA requests or to produce the requested records. Compl., ECF No. 1, ¶ 27.

Following the initiation of this lawsuit, each Defendant conducted searches for potentially responsive records. Ultimately, Defendant GSA located 52 pages of responsive records and released 23 pages with redactions under various FOIA Exemptions and withheld 29 pages in full under Exemption 5. Defs.' Mot., ECF No. 22, 3. Defendant OMB located 19 responsive records and withheld each record in full under FOIA Exemption 5. *Id*. Defendant DOJ located 6 pages of responsive records and released each page in full. *Id.* Defendant FBI located 38 pages of responsive records, released 10 pages in full, released 7 pages with redactions under various FOIA Exemptions and withheld 21 pages in full under Exemption 5. *Id.*

Following the production of responsive, non-exempt information, Defendants filed for summary judgment on November 4, 2019. ECF No. 22. On December 4, 2019, Plaintiff also filed for summary judgment. ECF No. 23. In requesting summary judgment and opposing Defendants' Motion, Plaintiff argued that Defendants' searches were inadequate for multiple reasons and that Defendant FBI and OMB had wrongfully withheld information under FOIA Exemption 5. *Id.*

Following Plaintiff's Motion, all Defendants, except Defendant FBI, conducted supplemental searches for responsive records. As a result of the supplemental searches, Defendant OMB located three additional responsive records and Defendant DOJ located one additional responsive record. Sec. Dec. of Heather Walsh, ECF No. 28-4, ¶ 9; Sec. Dec. of Vanessa Brinkmann, ECF No. 28-1, ¶ 8. Based on these supplemental searches, Plaintiff withdrew some of its grounds for challenging Defendants' searches but still challenges the adequacy of each search.

## II.     LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted). Congress remained sensitive to the need to achieve balance between these objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 562 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this

reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 562 U.S. at 565 (citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating the documents requested are ... exempt from disclosure under the FOIA." *Multi Ag Media LLC v. U.S. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III.     DISCUSSION

Plaintiff begins by challenging the adequacy of Defendants' searches conducted in response to Plaintiff's FOIA requests. Plaintiff presents multiple grounds as to why each Defendants' search was not reasonably calculated to find all responsive records. For the reasons discussed below, the Court agrees that Defendants' searches were inadequate.

An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was "reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotation marks omitted). "At summary judgment, a court may rely on [a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Ancient Coin Collectors Guild*, 641 F.3d at 514 (internal quotation marks omitted). "The agency cannot limit its search to only one or more places if there are additional sources that are likely to turn up the information requested." *Valencia-Lucena*, 180 F.3d at 326 (internal quotation marks omitted). Ultimately, the adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of [its] methods." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted); *see also Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." (emphasis in the original)).

Plaintiff challenges the adequacy of Defendants' searches in many respects. Plaintiff first brought these issues to light in its Motion for Summary Judgment. Following the filing of that Motion, all Defendants except Defendant FBI conducted supplemental searches. These

supplemental searches addressed some of Plaintiff's complaints but not all of Plaintiff's

complaints. The Court finds that Plaintiff has established that Defendants' searches, including

any supplemental searches, were not reasonably calculated to uncover all relevant documents.

### A.  Defendant GSA's Search

Plaintiff contends that Defendant GSA's search was inadequate because the search terms

used were all linked to email addresses. By linking each search term to an email address,

Defendant GSA effectively restricted responsive records to only emails.

In Defendant GSA's initial search, Defendant GSA identified GSA Administrator Emily

Murphy as the custodian of potentially responsive records from all three meetings. Dec. of Travis

Lewis, ECF No. 22-2, ¶ 6. Defendant GSA also identified Daniel Mathews, GSA's then-Public

Buildings Service Commissioner, as an additional custodian of records relating to the December

20, 2017 meeting. *Id.* GSA then conducted a search for documents from these custodians based

on the following search terms:

- "@omb.eop.gov" and "FBI"
- "@omb.eop.gov" and "HQ"
- "@omb.eop.gov" and "Consolidat"
- "@fbi.gov" and "FBI"
- "@fbi.gov" and "HQ"
- "@fbi.gov" and "Consolidat"
- "@who.eop.gov" and "FBI"
- "@who.eop.gov" and "HQ"
- "@who.eop.gov" and "Consolidat"
- "FBI HQ" and "Emily.murphy@gsa.gov"
- "FBI Consolidat" and "Emily.murphy@gsa.gov"
- "FBI HQ" and "daniel.mathews@gsa.gov"
- "FBI Consolidat" and "daniel.mathews@gsa.gov"

*Id.* at ¶ 7. Additionally, Defendant GSA conducted searches of each of the custodians' paper

records, electronic work folders, and shared network drives. And, the custodians searched their

personal work spaces for any paper records. *Id.* at ¶ 12. Defendant GSA also reviewed

documents it located from prior searches for records in connection with two other, similar FOIA requests. *Id.* at ¶ 8.

In its Motion, Plaintiff challenged the sufficiency of GSA's search on multiple grounds. First, Plaintiff argued that Defendant GSA improperly linked its search terms to email addresses and failed to search for obvious synonyms of the requested subject matter such as "Hoover Building" and "JEH." Pl.'s Mot., ECF No. 23, 12-16. Plaintiff further challenged Defendant GSA's limited choice of custodians of records. *Id.* at 18. Finally, Plaintiff argued that, while Defendant GSA alleged that it searched for paper records, the email-based search terms effectively limited its results only to email records. *Id.* at 26.

Following Plaintiff's challenges to Defendant GSA's search, Defendant GSA conducted a supplemental search. For its supplemental search, GSA designated Ms. Murphy, Mr. Mathews, and Michael Gelber, then-GSA Public Buildings Service Deputy Commissioner, as custodians of records for each request. Sec. Dec. of Travis Lewis, ECF No. 28-3, ¶ 5. Additionally, Defendant GSA "expanded the list of search terms to include 'Hoover Building' and 'JEH.'" *Id.* at ¶ 6.

Following this supplemental search, Plaintiff withdrew its challenges to Defendant GSA's initial choice to omit reasonable synonyms and to Defendant GSA's choice of custodians. Plaintiff only challenges Defendant GSA's decision to link its search terms to email addresses, thus limiting the responsive records to email records. Pl.'s Reply, ECF No. 29, 2-3.

In its initial Motion, Plaintiff challenged Defendant GSA's search as being completely linked to email addresses thus restricting responsive records to email records only. Defendant GSA failed to respond to this deficiency in its supplemental search. Defendant GSA conducted a supplemental search for the terms "Hoover Building" and "JEH." However, from Defendant GSA's declaration, it is not clear if these search terms were likewise deficient in that they were

linked to email addresses. Moreover, Defendant GSA gave no indication as to the parameters given to the custodians in their searches of their paper records and personal workspaces. Insofar as the custodians used the designated search terms, their searches were also unreasonably limited to email records. Defendant GSA failed to respond to this deficiency either through its supplemental search or its supplemental declaration.

In its FOIA request, Plaintiff requested "all meeting notes, agendas, informational material, readouts, and follow-up conversation notes" related to three White House meetings discussing the FBI Headquarters Consolidation Project. Compl., ECF No. 1, ¶¶ 14, 17, 22. "[N]othing in plaintiff's . . . request suggests any intent to restrict the scope of [the] request to email only." *Pulliam v. U.S. Envtl. Prot. Agency*, 235 F. Supp. 3d 179, 188 (D.D.C. 2017) (internal quotation marks omitted) (finding that the defendant's limiting of its search to emails was not reasonable). Given the breadth of Plaintiff's request, and lacking justification from Defendant GSA, the Court finds that the decision to link all search terms with email addresses unreasonably excluded other, non-email records. Accordingly, the Court finds that Defendant GSA's search was not reasonably calculated to discover all responsive documents.

**B. Defendant DOJ's Search**

Plaintiff contends that Defendant DOJ's search was inadequate because of the selection of custodians. In a supplemental search, Defendant DOJ searched then-Deputy Attorney General Rod Rosenstein's email records using the terms "Hoover" and "JEH." That supplemental search identified an email relating to the January 2018 White House meeting. Sec. Dec. of Vanessa Brinkmann, ECF No. 28-1, ¶ 8. The email was sent from then-Principal Associate Deputy Attorney General Robert Hur to Mr. Rosenstein on January 21, 2018, copying then-Associate Deputy Attorney General Zachary Terwilliger. Sec. Dec. of Hart Wood, ECF No 29-1, Ex. C.

The email was titled "Re: We need an agenda for the Wednesday WH meeting." In the email, Mr. Hur wrote, "Per WHCO, topic is Hoover building reno proposal. Heads of GSA and OMB will be there to discuss $ and nuts/bolts. We will find some time on Tuesday for Chris to bring you up to speed." *Id.* Despite the fact that this email identified two custodians of records integral to the preparation for the meeting at issue, Mr. Hur and Mr. Terwilliger, Defendant DOJ did not search Mr. Hur or Mr. Terwilliger's records for other responsive material.

Defendant DOJ initiated its search by identifying Mr. Rosenstein as the custodian of records. Dec. of Vanessa Brinkmann, ECF No. 22-4, ¶ 14. Defendant DOJ canvassed other staff and determined that there were no additional custodians of records. *Id.* Defendant DOJ searched Mr. Rosenstein's email and electronic files for the term "FBI" within the date ranges of a one-week interval before and after each White House meeting. *Id.* at ¶¶ 15, 16.

In its Motion, Plaintiff challenged Defendant DOJ's search on multiple grounds. First, Plaintiff contended that Defendant DOJ failed to search for obvious synonyms of the subject matter such as "Hoover" and "JEH." Pl.'s Mot., ECF No. 23, 12-16. Plaintiff also challenged Defendant DOJ's selection of Mr. Rosenstein as the only custodian of records. *Id.* at 18. Finally, Plaintiff argued that Defendant DOJ unreasonably restricted its search to electronic records. *Id.* at 24-25.

Following Plaintiff's challenges to its search, Defendant DOJ conducted a supplemental search and filed a supplemental declaration. In the supplemental declaration, Defendant DOJ made clear that it had conducted a search for paper records but had not located any responsive paper records. Sec. Dec. of Vanessa Brinkmann, ECF No. 28-1, ¶ 7. Defendant DOJ also conducted a supplemental search within Mr. Rosenstein's email and electronic records using the

search terms "Hoover" and "JEH." *Id.* at ¶ 8. Through this search, Defendant DOJ discovered the one additional responsive email record which was disclosed to Plaintiff. *Id.*

Following Defendant DOJ's supplemental search, Plaintiff withdrew its challenges to the search terms and to the types of records searched. Pl.'s Reply, ECF No. 29, 4. However, Plaintiff still challenges Defendant DOJ's choice of Mr. Rosenstein as the only custodian of records.

As previously stated, in its supplemental search of Mr. Rosenstein's records, Defendant DOJ discovered an additional email record. The email was sent from then- Principal Associate Deputy Attorney General Hur to Mr. Rosenstein on January 21, 2018, copying then-Associate Deputy Attorney General Terwilliger. Sec. Dec. of Hart Wood, ECF No 29-1, Ex. C. The email was titled "Re: We need an agenda for the Wednesday WH meeting." In the email, Mr. Hur wrote, "Per WHCO, topic is Hoover building reno proposal. Heads of GSA and OMB will be there to discuss $ and nuts/bolts. We will find some time on Tuesday for Chris to bring you up to speed." *Id.*

Defendant DOJ's initial decision to search the records of only Mr. Rosenstein may have been reasonable. However, courts "evaluate[] the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). Following Defendant DOJ's supplemental search of Mr. Rosenstein's records, Defendant DOJ discovered a record demonstrating that at least two other individuals could have information responsive to Plaintiff's FOIA requests. In the newly discovered record, Mr. Hur sent an email to Mr. Rosenstein, copying Mr. Terwilliger, discussing the need for an agenda for the January 24, 2018 White House meeting on the FBI Headquarters Consolidation Project. This email reflects that more individuals that Mr. Rosenstein were involved in preparing for the meeting and could have

agendas, informational material, readouts, and follow-up conversation notes related to the meeting. Based on the information disclosed in this email, showing the involvement of individuals other than Mr. Rosenstein, Defendant DOJ was required to "revise its assessment of what [was] 'reasonable' … to account for leads that emerge[d] during its inquiry." *Campbell*, 164 F.3d at 28.

Defendant DOJ argues that "[a]s Mr. Rosenstein was the sole DOJ official in attendance at the White House meetings, all communications related to the meeting are reasonably likely to have directly involved him." Sec. Dec. of Vanessa Brinkmann, ECF No. 28-1, ¶ 10. Therefore, Defendant DOJ was not required to designate other officials, such as Mr. Hur or Mr. Terwiliger as additional custodians. *Id.* However, even if Mr. Rosenstein was the sole attendant of the meeting, the disclosed email makes clear that he did not work alone in preparing for the meeting and may not have worked alone in the meeting's follow-up. In conducting its search, Defendant DOJ was not permitted to "ignore *clear leads* … [that] may indicate … other offices that should have been searched" such as "records custodians who should have been consulted." *Coleman v. Drug Enf't Admin.*, 134 F. Supp. 3d 294, 301 (D.D.C. 2015) (internal quotation marks omitted); *see also Valencia-Lucena*, 180 F.3d at 326-27 (reversing grant of summary judgment for the defendant agency where "the record itself reveals positive indications of overlooked materials" (internal quotation marks omitted)).

Based on the information disclosed in the responsive email, the Court finds that Defendant DOJ's decision to search the records of only Mr. Rosenstein was not reasonably calculated to uncover all responsive documents.

**C.  Defendant OMB's Search**

Plaintiff challenges Defendant OMB's search due to its inadequate selection of search terms. Even in its supplemental search, Defendant OMB used only the search term "FBI" within 50 words of "Headquarters." Sec. Dec. of Heather Walsh, ECF No. 28-4, ¶ 8. Defendant OMB refused to include obvious synonyms such as "JEH" and "Hoover Building."

In conducting its search, Defendant OMB identified three custodians of responsive records—then-OMB Director Mick Mulvaney, then-OMB Deputy Director Russ Vought, and then-OMB Chief of Staff Emma Doyle. Dec. of Heather Walsh, ECF No. 22-3, ¶ 6. Defendant OMB established time frames for responsive documents ranging from seven days before and seven days after each of the White House meeting dates. *Id.* at ¶ 7. Defendant OMB then conducted a proximity search for records to include documents with "FBI" within 50 words of "headquarters." *Id.* at ¶ 8. Defendant OMB further concluded that all responsive records would be in electronic rather than in paper form. *Id.* at ¶ 9. So, Defendant OMB searched archives of emails, email attachments, meeting invitations, and work folders. *Id.*

In its Motion, Plaintiff challenged Defendant OMB's search on a number of grounds. First, Plaintiff contended that Defendant OMB failed to search for obvious synonyms such as "JEH" and "Hoover building." Pl.'s Mot., ECF No. 23, 12-16. Plaintiff also faulted Defendant OMB for designating an insufficient number of custodians of record. *Id.* at 18. Finally, Plaintiff challenged Defendant OMB's decision to limit its search to electronic records, excluding any paper records. *Id.* at 22-24.

Following Plaintiff's challenges, Defendant OMB conducted a supplemental search. In conducting the supplemental search, Defendant OMB designated an additional custodian of records, Andrew Abrams the Deputy Associate Director for Transportation, Homeland, Justice,

and Services Division. Sec. Dec. of Heather Walsh, ECF No. 28-4, ¶ 7. This supplemental search

led to the discovery of three additional responsive agency records. *Id.* at ¶ 9. Also, in response to

Plaintiff's challenges, Defendant OMB conducted an additional search for potentially responsive

paper records. *Id.* at ¶ 10. Defendant OMB reports that this search led to no additional records,

but this point is disputed by Plaintiff. *Id.* at ¶ 11.

Following Defendant OMB's supplemental search, Plaintiff withdrew its challenges to

Defendant OMB's selection of custodians of records and to Defendant OMB's initial decision

not to search paper records. Pl.'s Reply, ECF No. 29, 6. However, Plaintiff maintains its

challenge to Defendant OMB's decision to use inadequate search parameters—"FBI" within 50

words of "headquarters."

In its declaration, Defendant OMB stated that it refused to conduct a search with the

obvious synonyms "Hoover Building" and "JEH" because those terms "were simply not in

common usage by OMB to refer to the subject of the Requests." Sec. Dec. of Heather Walsh,

ECF No. 28-4, ¶ 8. And, Defendant OMB reported that the synonyms were not in use by other

agencies when communicating with OMB staff. *Id*. Defendant OMB posited that conducting a

search with those terms would result in unresponsive records. *Id.* The Court finds this argument

to be unpersuasive.

First, Defendant OMB argues that the terms "JEH" and "Hoover Building" are not used

by the OMB or by other agencies in communications with the OMB. However, Plaintiff has

introduced evidence that other agencies use these terms to refer to the subject matter of

Plaintiff's FOIA request. *See, e.g*., U.S. GEN. SERVS. ADMIN., About the Hoover Building,

https://www.gsa.gov/real-estate/gsa-properties/visiting-public-buildings/herbert-c-hoover-

federal-building/about-the-hoover-building (last visited April 17, 2020); U.S. GEN. SERVS.

ADMIN., FBI Headquarters Consolidation, www.gsa.gov/fbihqconsolidation (last visited April

17, 2020) ("The project involves exchanging JEH for a new facility . . . ."); *see also* Dec. of Hart

Wood, ECF No. 23-2, Ex. B at 2 (FBI production excerpts ("Build New or Renovate JEH?")).

So, it is reasonable to expect that other agencies may use these terms when communicating with

OMB even if OMB itself does not regularly use the terms.

Additionally, Defendant OMB argues that a search using the requested terms would

result in a number of unresponsive results. But, without more, the speculation that the search

terms may result in some unresponsive results is not a sufficient reason to exclude the search

terms. *Popular Democracy v. Bd. of Governors of Fed. Reserve Sys.*, No. 16-cv-589, 2019 WL

3207829, at *7 (E.D.N.Y. July 15, 2019) ("Defendant also contends that the search terms

suggested by Plaintiff could yield a large number of false positives and burden the Board. . . . By

providing only speculation as to the potential burden of using additional and broader search

terms, Defendant has not met its burden of showing that the use of additional and obvious search

terms would be unreasonable."); *see also Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247,

275 (D.D.C. 2014) (requiring that an agency sufficiently explain why a search is unreasonable).

The Court finds that Defendant's OMB's search parameters—"FBI" within 50 words of

"headquarters"—were unreasonably narrow and not designed to uncover all responsive

documents. At least two other district courts within this Circuit, addressing FOIA requests

pertaining to similar subject matter, have come to the same conclusion. In *Citizens for*

*Responsibility and Ethics in Washington v. United States General Services Administration*, No.

18-cv-377, 2018 WL 6605862 (D.D.C. Dec. 17, 2018), the Court considered a FOIA request

which "sought records explaining the decision to abort the swap-relocation plan [for the FBI

building] and related communications between GSA brass and other government officials,

including the White House." *Citizens for Responsibility and Ethics in Washington,* 2018 WL 6605862, at *1. Defendant GSA had conducted a search for records omitting the search terms "JEH" and "Hoover Building." *Id.* at *5. The court concluded that Defendant GSA's search terms were unreasonable because it was "likely that 'JEH' and 'the Hoover Building'—referring to the current headquarters—would be used in communications and records regarding the headquarters consolidation project; a search reasonably calculated to uncover all documents responsive to [the plaintiff's] request therefore ought to include these rather obvious synonyms." *Id.* And, in *American Oversight v. Office of Management and Budget*, No. 18-cv-2424, 2020 WL 1536186 (D.D.C. Mar. 31, 2020), the court was again addressing a FOIA request for records reflecting conversations among OMB officials and the White House Office "regarding the FBI headquarters consolidation project." *American Oversight*, 2020 WL 1536186, at *1. Defendant OMB conducted a search using primarily terms such as "FBI" and "Headquarters." *Id.* at *4. The court determined that the search was inadequate because "OMB's search would not have captured documents referring to the FBI headquarters by any name other than 'FBI headquarters' or 'FBI HQ.' Such a search could not be reasonably expected to produce all communications regarding the FBI headquarters consolidation project'" *Id.* (internal quotation marks omitted).

While the FOIA requests in this case differ from those in the cases described above, all of the FOIA requests involve the same general subject matter of the FBI headquarters consolidation project. And, the Court is persuaded by the reasoning in both opinions. Generally, "omitting from the search an alternative name by which the subject of the search is known renders the search inadequate." *Utahamerican Energy, Inc. v. Mine Safety & Health Admin*., 725 F. Supp. 2d 78, 84 (D.D.C. 2010); *see also Gov't Accountability Project v. United States Dep't of Homeland Sec*., 335 F. Supp. 3d 7, 11 (D.D.C. 2018) (finding search unreasonable where the agency failed

to include logical variations of the subject matter terms). Here, Defendant OMB omitted recognized synonyms for the FBI headquarters, thus rendering its search inadequate.

By omitting obvious synonyms, Defendant OMB's search was not reasonably calculated to produce all responsive records. And, Defendant OMB has failed to satisfactorily justify its decision to omit these search terms.

**D. Defendant FBI's Search**

Plaintiff challenges Defendant FBI's search in two regards. First, Plaintiff contends that Defendant FBI's search was inadequate due to the narrow selection of search terms. Defendant FBI refused to search for obvious synonyms "JEH" and "Hoover" claiming that those variations were overly broad and unreasonable. Sec. Dec. of David Hardy, ECF No. 28-2, ¶ 6. Second, Plaintiff contends that Defendant FBI's search was unreasonable because Defendant FBI failed to search Director Christopher Wray's paper records. From the declarations, it appears that Defendant FBI conducted only an electronic search of Director Wray's materials and did not conduct any search of his paper records.

In response to Plaintiff's FOIA requests, Defendant FBI conducted a search of its Central Records System ("CRS") for responsive documents. Dec. of David Hardy, ECF No. 22-5, ¶ 27. Defendant FBI used the search terms, "Headquarters Relocation," "FBI HQ Relocation," "Headquarters Consolidation," and "FBI HQ Consolidation." *Id.* The search located no responsive records. *Id.* Defendant FBI then sought the assistance of the Finance and Facilities Division ("FFD"), which was responsible for managing the FBI headquarters consolidation project. *Id.* at ¶ 28. FFD coordinated with multiple points of contact in order to search for any records related to the two meetings specified by Plaintiff. *Id.* at ¶ 29.

In its Motion, Plaintiff challenged Defendant FBI's search on multiple grounds. First, Plaintiff argued that Defendant FBI's search terms were too narrow. Pl.'s Mot., ECF No. 23, 12-16. Second, Plaintiff contended that it was not clear whether or not Defendant FBI searched records belonging to officials other than Director Wray. *Id.* at 18 n.8. Finally, Plaintiff challenged Defendant FBI's failure to search non-electronic records even though many of the materials requested such as notes and informational materials may not be preserved in electronic form. *Id.* at 25-26.

Following Plaintiff's challenges, Defendant FBI filed a supplemental declaration. Defendant FBI stated that its search terms were reasonable and the addition of "JEH" and "Hoover Building" as additional search terms would have been "overly broad and unreasonable." Sec. Dec. of David Hardy, ECF No. 28-2, ¶ 6. Defendant FBI explained that searches for these terms "would likely include a large volume of FBI correspondence, emails and other records associated with investigative cases focused out of Headquarters, or the operations, maintenance, and management of Headquarters, all of which are unrelated to the subject of Plaintiff's Requests." *Id.* Defendant FBI further explained that its search of the CRS was not limited by any custodian and covered all records stored electronically. *Id.* at ¶ 7.

Finally, Defendant FBI provided greater explanation of its search methodology. Defendant FBI explained that it coordinated with many FFD points of contact including Douglas Grant, then-Section Chief of the National Capital Region Section, the employee who served as Unit Chief of the HQ Program Management Office, as well as others with relevant knowledge. *Id.* at ¶ 9. These employees reviewed records they maintained in their possession, including electronic and paper records. *Id.* As these records were reviewed manually, no search terms were used. *Id.* Defendant FBI also contacted the FBI's Special File Room for any relevant records

from the Director's Office. *Id.* at ¶ 10. A search of the internal database was conducted for any responsive records using the following search terms: "FBI HQ Consolidation," "FBI HQ Consolidation Project," "HQ Consolidation," "HQ Consolidation Project," "Meeting in Regards to (the previous terms)," "Meeting Notes for (the previous terms)," or "FBI Move." *Id.* Finally, Defendant FBI contacted the Executive Offices of Associate Director Haley of FFD and Associate Director Schlendorf of the Human Resources Division. *Id.* at ¶ 11. AD Haley confirmed that primary custodians likely to have records had been searched. AD Schlendorf's Executive Office conducted a search for paper and electronic records but did not find any. *Id.*

Following Defendant FBI's supplemental declaration, Plaintiff refined its challenges to Defendant FBI's search. Plaintiff withdrew its challenge to Defendant FBI's selection of custodians. Pl.'s Reply, ECF No. 29, 8. However, Plaintiff continues to challenge Defendant FBI's failure to include necessary search terms such as "JEH" and "Hoover Building." *Id.* at 9. Additionally, Plaintiff challenges Defendant FBI's failure to search Director Wray's paper records. *Id.* The Court will address each challenge in turn.

First, Plaintiff challenges Defendant FBI's choice of search terms. Defendant FBI determined that search terms and obvious synonyms "JEH" and "Hoover Building" were overly broad and unreasonable because such a search would lead to a large volume of non-responsive documents. However, this conclusory statement is insufficient to show that a search using these terms is unreasonable. *Ayuda*, 70 F. Supp. 3d at 275 ("[W]hen an agency claims that complying with a request is unreasonable, it bears the burden to 'provide [a] sufficient explanation as to why such a search would be unreasonably burdensome.'" (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995))). Notably, Defendant FBI does not claim that search terms "Hoover building" and "JEH" would be unlikely to locate records responsive to

Plaintiff's requests. Additionally, insofar as the searches would produce a plethora of unresponsive documents, Defendant FBI failed to consider whether the terms could be combined with restrictions such as a narrowed timeframe or other search terms such as "relocation" or "consolidation" in order to lessen the number of unresponsive documents.

As such, the Court concludes that Defendant FBI's failure to search for obvious synonyms resulted in a search not reasonably calculated to find all responsive documents. The Court has already addressed this issue in the context of Defendant OMB's search. *See Supra* Sec. III.C. And, at least two other courts in this Circuit have found insufficient the failure to include the search terms "JEH" and "Hoover building" in response to FOIA requests relating to similar subject matter. *Citizens for Responsibility and Ethics in Washington*, 2018 WL 6605862, at *5; *American Oversight*, 2020 WL 1536186, at *4. For the reasons that have already been discussed, the exclusion of these terms rendered Defendant FBI's search inadequate.

Second, Plaintiff challenges Defendant FBI's failure to search Director Wray's paper records. In its supplemental declaration, Defendant FBI clarified that it searched Director Wray's electronic records as well as the paper records of various potential custodians. However, Defendant FBI failed to state that it searched Director Wray's paper records. And, assuming that those records were not searched, Defendant FBI failed to justify its decision not to search those paper records.

An "agency bears the burden of establishing that any limitations on the search it undertakes in a particular case comport with its obligation to conduct a reasonably thorough investigation." *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1101 (D.C. Cir. 1983). Again, Plaintiff's FOIA requests asked for "[a]ll meeting notes, agendas, informational material, readouts, and follow-up conversation notes" related to two White House meetings attended by

Director Wray. Compl., ECF No. 1, ¶¶ 17, 22. As Director Wray was in attendance at these meetings it is reasonable to think that he might have notes, handouts, or other material that are in paper form and not electronically stored. Lacking adequate explanation, it was not reasonable for Defendant FBI to fail to search Director Wray's paper records. *See Property of the People, Inc. v. Dep't of Justice*, 405 F. Supp. 3d 99, 123 (D.D.C. 2019) (finding search inadequate where "[n]either declarant indicates whether [defendant] searched its paper records").

For the reasons explained above, the Court finds that Defendant FBI's search in response to Plaintiff's FOIA requests was inadequate because it did not use obvious synonyms as search terms and it did not include, or justify the failure to include, a search of Director Wray's paper records.

## IV.    CONCLUSION

Because the Court concludes that Defendants' searches were inadequate, the Court GRANTS IN PART Plaintiff's Motion for Summary Judgment. The Court otherwise DENIES WITHOUT PREJUDICE Plaintiff's Motion and Defendants' Motion.

At this time, the Court will not address the remaining issues pertaining to withholdings and redactions. Instead, the Court ORDERS that Defendants conduct adequate searches. The parties are ORDERED meet and confer to discuss Defendants' additional searches. Defendants are ORDERED to complete their new searches by no later than JUNE 30, 2020. If it is not possible to complete the searches by that date, Defendants should file a Status Report prior to MAY 29, 2020, informing the Court as to why the deadline cannot be met and proposing a new deadline.

Following Defendants' new searches, if necessary, the parties can file renewed motions for summary judgment addressing all disputed withholdings and redactions in order to avoid piecemeal litigation. An appropriate Order accompanies this Memorandum Opinion.

       /s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge